The next case today is Thomas M. Dussel v. Factory Mutual Insurance Company, appeal number 21-1609. Attorney Callahan, please introduce yourself for the record and proceed with your argument. Good morning and may it please the court. My name is Danielle Callahan and I represent the appellant Thomas Dussel. May I please reserve one minute for rebuttal? You may. Thank you. The most important issue before this court is that the appellant's claims rested on sufficient disputes of material facts that should have allowed this case to proceed beyond the summary judgment phase and to a jury trial. The district court failed to review the evidence in a light most favorable to the appellant as required. It improperly weighed and assessed the credibility of the evidence and it failed to canvas the record. These issues resulted in improper issuance of summary judgment in favor of the appellees. Taking each claim in two significant ways. First, by failing to find that the appellant engaged in protected activity and second, by finding that the appellant failed to show a sufficient causal connection between his protected activities and retaliation. Both of these are reversible error. While we do contend that appellant engaged in several instances of protected activity, I want to highlight the appellant's last two instances of protected activity that occurred on June 4, 2018 and June 19, 2018. The district court's opinion was silent as to these instances. The appellant was terminated just three months later on September 12th. On June 4th, appellant's legal counsel sent a letter specifically opposing the adverse actions by the company and she indicated that these actions were retaliatory in nature, thereby she was opposing forbidden practices under Chapter 151B, Section 4. This was protected activity. She was, on appellant's behalf, opposing the forbidden practice of both discrimination against Holland and retaliation against appellant, Holland, and others. Further, on June 19th, less than three months before his termination, the appellant sent an email to his direct supervisor, Alex Tadmori, complaining of the adverse actions by the company and indicated that they were punitive in nature. In this communication, he was opposing the forbidden practice of retaliation. This was protected activity and can be found at Appendix 698 to 690. I'm sorry, 689 to 690. Let me ask you one more question. In Judge Gorton's opinion, at the district level, he goes on to page 20 and talks about causal connection, but he says, let's assume, arguendo, that he engaged in protected activity. Let's assume you have a protected activity, but where is the causal connection? Because there are several events that are not disputed. I know what was allegedly stolen, but didn't he enter? There's the issue with the phone. Those issues are not necessarily disputed, even though you may argue, well, we can look at it one way or another, but things did happen. Isn't there a causal or lack of a causal connection there? Your Honor, there are allegations that were made against the plaintiff, but we would indicate that these are either disputed or pretextual or both. The causal connection that the appellant was able to show on the record was both through temporal proximity and other evidence. For example, the appellant presented evidence that the company actually had circulated a memorandum to human resources staff, essentially acknowledging that the relocation would have the effect of making those relocated want to part from the company. On page 622 of the appendix in the question and answer section, the memorandum coached HR staff to inform employees that severance could be provided if employees signed a release of claims against the company. The company knew that this action would have the effect of making those subjected to it want to leave the company. Additionally, with regard to the Verizon investigation, not only does my client present evidence that disputes the wrongdoing alleged by the company, but it was also pretextual in the sense that there were other employees who actually had more phone lines to their name that were not subject to an investigation, that were not terminated. This does create a genuine dispute of material fact that should have been presented to the jury. Were those employees similarly situated to yours? Yes, they were, Your Honor. I thought your client had a very different position in the company than those. My client was the president and CEO of FM Global's subsidiary, Hobsbrook Management. The employee that I'm referring to that had four phone lines instead of the three that were associated with my client's number, this employee was directly below my client. He was in charge of running the hotel that was owned and operated by Hobsbrook Management. As he didn't have the exact same position as my client, he did have a very similar position. What about the grounds for the adverse action? If you're going to challenge it as pretextual, we start by looking at what the ground given was. Was that solely based on the phone line concern or wasn't there other conduct, which in other words, if you're trying to have a comparator, don't you need a comparator that's got comparable conduct, not just the one phone line point? Well, the issue with regard to his adverse action was it was a culmination of a variety of factors that the company indicated that they used. They indicated that they used both the Verizon issue and the food theft allegations, which again were disputed by my client. However, in Judge Gordon's decision, the district court decision, he indicated that the similarly situated employee, Mr. Casey, was not subject to or was not suspected of the same type of misconduct that my client was subjected to. However, actually, the appellant was able to show on the record that this other employee, Mr. Casey, was actually found to have engaged in far more serious conduct and he was not treated as such. So for example, on this other employee, Mr. Casey, he was also found to have secreted more than $41,000 from the company in the form of a wedding for his child, an invoice that went unpaid for more than three years. And once the company became aware of it, they did not terminate him. He was employed by the company for at least another more than two years. So with regard to my client's adverse action, he was subject to a termination. Other employees within the company were not. Does that address your question, Your Honor? Let me also add, not only the phone issue, but there's the issue, and again, assume he didn't take anything from that cafeteria in the building where it's alleged, but he went there without any purpose or reason to go or ability to go there. I think it was over 50 times, maybe close to 70. There's also an issue about in his system, there was pornography in his work computers and everything. So if you add all those up, where's the pretext? Or where's the issue of material fact as to the pretext? The materials that were found on his electronic systems were actually found after his termination. So with regard to the adverse action taken against him, we would assert that the court can't consider those materials as justification for his termination because they were not discovered until after his termination. With regard to going to the facility in Wakefield, where the company alleges that he stole things, my client has provided information to not only dispute this, but actually provide a justification for him being there. During his deposition, he testified that as part of being the president and CEO of the company, he was always making sure that facilities that the company owned or operated were operating in a favorable manner. There were also depositions of staff, kitchen staff, who attested that my client knew the he knew how things were running. So he did have a business purpose in going there. In addition, he indicated that on the occasions that he was going there, he was actually entertaining on behalf of the company, very oftentimes tailgating at football games. And so part of the reason going there was to fill up the coolers with ice, not stealing materials or stealing anything. And again, I would also note that the company failed to present any evidence of any damages, any specific items that were taken, or any costs incurred. So there's actually no evidence of that. Sorry, I want to jump for a moment to the age discrimination issue. And so there's an SJC case, Knight versus Avon Products, that the district court relied on. And looking to the language of Knight v. Avon, is it your, is it not your, why should we find that your client has sufficiently argued a prima facie case of age discrimination? Where it doesn't appear that he's attempted to show that he was replaced by someone five or more years younger, or even replaced at all? Your Honor, that can be one way to show age discrimination. Another way to show age discrimination would be through disparate treatment. So a younger individual being treated in a disparate manner by the company. And that's my client's age discrimination claim. And what's your best case for that proposition? Uh, Your Honor, I apologize if I could just... In other words, you're saying that Knight is not controlling? It is not controlling. I apologize if I could just get that case for you right now. I apologize, Your Honor. I will have that during my rebuttal if that is permissible. That's fine. Thank you, Your Honor. Thank you. At this time, would Attorney Callahan mute her audio and video? Attorney Porter, please unmute your audio and video. And introduce yourself on the record to begin. Good morning, and thank you very much, Your Honors. Matthew Porter from Jackson Lewis for the appellee and former defendant in this case, Factory Mutual Insurance Company, which is referenced throughout as FM Global. This is a case that has been brought on two general laws. The age discrimination claim that Judge Katzman just mentioned that didn't have a lot of discussion during the appellant's argument, as well as the retaliation claim, both under 151B. They're kind of blended together when you look at the briefs because, you know, when you ask about the prima facie case for age discrimination, when you ask about the burden shifting and the legitimate nondiscriminatory reason, those are basically the same. And then they're also basically the same reason for the legitimate nonretaliatory reason for this gentleman's termination. And one of the things that's really important when you look at this case is to look at two parts to this. There's the theft of the cell phone service, as Your Honors pointed out. There's the theft of the food or whatever it was from the cafeterias. And we don't, and we concede, we don't actually know the items that were actually taken from the cafeteria. It'd be impossible to know that because of the fact that he brought in empty bags and then he brought them out chock full of food. And so the point wasn't that this was a criminal prosecution. The point wasn't this was us enforcing a counterclaim in this particular instance. What was going on here is the company was making a determination based on what an investigation that in the first instance had nothing to do with this individual, that he was taking food from the cafeterias. The investigation into the Verizon cell phone issue originally had nothing to do with this individual. Another individual had been leaving the company, asked if he could keep his cell phone. People weren't sure. They looked into it. They saw this mess with the cell phones, where there are a number of unretired numbers that appeared. And so what did they do? They went to Mr. Dussel, who was the CEO of the company, had oversight of this program ultimately, and they asked if he knew anything about it. And he said he didn't know anything about it. But then immediately after basically leaving the meeting with his manager, Mr. Tadmori, he got on the text with the Verizon reseller, Mr. Lapham. So it's really remarkable and tried to take his wife and his daughter off of the company's cell phone plan. It's so qualitatively from the issue that he raises with his subordinate, Mr. Casey, who's not similarly situated to him, either in terms of his position, his duties and responsibilities, or any of the conduct that Mr. Casey has been alleged to have engaged in. Because with Mr. Dussel, not only is there the theft, there's also the lying and the disingenuous behavior. And it's important to emphasize this individual, Mr. Dussel, is the CEO of the company. This is an operating company of FM Global. So he's in a position of trust and confidence, and he preaches his fiduciary duty. Mr. Ingram, the chief financial officer of FM Global, actually spoke to this during his deposition. He said the issue that was much bigger than the taking of the cell phones and the food was the duplicity, was the lying about it, which he said was totally unacceptable for a CEO of a company. Of course it is. And that's why he was terminated. Your opponent made reference to the subordinate evidence showing something about the funds being diverted for the personal use of a family wedding. Yes, your honor. There's nothing in the record, actually, that would support that contention. What there is in the record is some invoices. FM Global has a number of holding companies, including HBM. This is the company that Mr. Dussel and Mr. Casey both worked for. And Mr. Casey had responsibilities for one of the hotels. It's down by Gillette Stadium. And so what ended up happening was his daughter got married at the hotel. An invoice was generated as part of the record in this case, and it was submitted to his daughter. There's nothing in the invoice, and the invoice is ultimately paid. But there's nothing in the invoice that suggests that this was going to be a comp by the company, that this was some business expense that was going to be charged to the company when it was really a personal expense, which is exactly what we're talking about with the cell phones of Mr. Dussel. Mr. Dussel had his wife and his daughter on the company's cell phone plan and was presenting it as if it was being used for business purposes when it wasn't. And that was definitively And then just with respect to the subordinates use of the cell phone lines, could you just address that and whether it's the same or different? It's different because there was never any evidence that these were actually phone lines that were actually in use. What happened with this company is they were retiring, people were changing cell phones, they were getting new cell because what they weren't doing was they weren't canceling the numbers after they were going on to the next number. So in the case of Mr. Casey, he had prior numbers that were just sitting out there, no one was using them, he wasn't using them. And it was never a finding that he was charging them for use by a family member or anybody else. He had a cell phone, he used it for his own purposes. And that was what the record included. I have a question. Let me ask you. Go ahead, Judge Katzen. The district court judge, in his opinion, dealing with the age discrimination issue and concluding that Mr. Dussel's reliance on years of positive performance reviews and bonus compensation were insufficient to make out the second element of the prima facie case for age discrimination, the district court said, this is a quote, Dussel ignores the evidence that in his final year with the company, FM Global discovered, one, that he had improperly charged the company for personal phone lines and other expenses, two, that he had problems managing his staff, and three, security camera footage of Dussel entering company-owned property outside of business hours and for no legitimate purpose. Why isn't this the sort of weighing of evidence that is not appropriate at the summary judgment stage? Well, it is appropriate. It wasn't a weighing of the evidence. Four minutes remaining. This was actually evidence that was not challenged. At the end of the day, they made a determination. He admitted it. He sort of came up with this idea that he had been doing this. First, he said he didn't know. Then he said, I did it. And then at the end, he said, well, I made a mistake. I was confused or I panicked. So at the end of the day, there's really no alternative narrative in the record that's genuinely in dispute that he was charging his wife and his daughter to the company's cell phone plan. His daughter testified to that. It's in the record. And as far as the issue with relating to his having problems managing his staff, Your Honor, I don't know that Mr. Dussel, other than his general idea that, well, gee, I thought I was doing a great job managing my staff, when in fact we have multiple complaints. That's the basis for their retaliation claim. Ms. Holland is complaining in 2015, nothing gets better. Under Mr. Dussel's watch, Ms. Holland complains to HR in 2018, nothing gets better under Mr. Dussel's watch, which is why Mr. Tadmori testified that he needed to bring this group down to Rhode Island to be supervised. So it's not a matter of a weighing of an evidence. These are just undisputed facts in the record. The only really disputed fact in record, Your Honor, is what actually was contained in those bags. And we don't know. And with respect to the night and age discrimination under Massachusetts law, you heard Mr. Dussel's counsel say, well, they're actually proceeding under a somewhat different theory. What's your response? Well, I would say, Your Honor, respectfully, Knight does control. It's the SJC's articulation of McDonnell Douglas in the Commonwealth of Massachusetts. These are Chapter 151D claims. So Massachusetts law controls. Does he have to show that he was replaced by somebody who was five years younger? He does, Your Honor. And I know that they've identified some contrary argument to this idea of being somebody in a similarly situated position or an adverse treatment. But I don't believe that's the state of the law in the Commonwealth, for one. And for two, even if that were so, they wouldn't meet that standard, which is where I think that Judge Gorton was going with this. But Judge Gorton really didn't touch on that, as you noticed in his order. What he did was he jumped from the failure to make the job an acceptable manner, and he jumped right to our legitimate non-discriminatory reason. Really important point on that legitimate non-discriminatory reason, which is this, which is that at the end of the day, what we're asking is, is what was in the mind of the company when they made the decision to terminate this individual? And what's clear in the record, which is undisputed in the record, is that what was in the mind of the company at the time they terminated Mr. Dussel was that he had taken things that belonged to the company for his personal use, and that he had lied about it. And that's why they terminated him. Counsel, let me ask you one question. Is it your position that the cell phone issue, cell phone occurrence, is sufficient in and of itself to discharge the appellant, or are you saying it's the cell phone plus the cafeteria issue? Is it one or both, or either or? Well, I think that at the end of the day, your honor, we don't need to parse them out that directly because both of them occurred, and they were both occurring in tandem with one another in terms of the discovery by the company. And if you look at the emails back and forth between Mr. Ingram, the COO, and the CEO of the parent company, there's sort of this progressive sort seeing. We're seeing more. We're seeing more in real time. But that's time. Just to finish, to answer your question, your honor, is that at the end of the day, the fact that he was taking the cell phone service for his wife and daughter and lying about it would be sufficient grounds to terminate him. Thank you. Thank you, your honor. Thank you, Mr. Porter. At this time, if you would please mute your audio and your video. And, Attorney Callahan, please reintroduce yourself for your one-minute rebuttal. Good morning. Danielle Callahan on behalf of the appellant, Thomas Dussel. May I proceed? You may. That case that I rely on is a 2011 case. It's a SJC case, Syed v. Klein, and it can be found at 947 Northeast 2nd, 520. And night was decided by the SJC in 2003, approximately eight years earlier. So we would rely on Syed v. Klein. The theory, if you're relying on Syed, the theory is dependent on essentially us agreeing with you with respect to how you characterize what the evidence shows about the subordinate. Is that the disparate treatment? Yes, your honor. What I would like to really highlight during my last minute is that there was evidence on the record that should have allowed this to go to a jury trial. The evidence of my client's performance being at an acceptable level was not only his 34 and a half years preceding his last six months, which were vastly different from the preceding 34 and a half years, also objective metrics. Them saying that he was not able to supervise his employees were purely subjective. He provides subjective metrics that did show positive performance. The wedding invoice, by the way, is also at Appendix 550. Counsel, your video just dropped out. I apologize. The Appendix 550 is where you can find the wedding invoice, and that speaks for itself. I think that you can tell that being paid four years after a wedding is certainly not the same as being paid in time. And also, what I note about the Verizon issue is that the context of how that issue came up is not actually what's presented in the briefs by the company. Actually, what was presented... Could you clarify one thing for me, which is, where is the crispest statement of what you said? The assertively legitimate non-discriminatory reason that was given by the employer to your client for why the termination occurred? In his termination letter, Your Honor. That would probably be the crispest statement. Your opponent's counsel is describing that letter as describing the grounds as the lying about the food and the cell phone service. I take it your account of that letter is that it's not limited in that way. Is that right? Well, Your Honor, we actually dispute the allegations made within that letter, actually. No, no, no. I'm not trying to figure out whether the allegations in the letter are true. I'm trying to figure out what you understand to be the reason that was given to your client for the termination and whether it's limited to the allegation of the cell phone usage, the food, and the lying about it. Yes. Those were the proffered reasons for his termination. So, what's the significance to you, then, of the performance in managing the staff? What does that have to do with the case? Well, it allows him to meet his prima facie case to... I see. Only for that purpose. I got it. Yes. And I would just like to note, Your Honors, with regard to the lying, my client actually did not lie, if you look at the record. When he was notified of the policy with regard to the cell phones, which was actually that in contrary to how HBM had their cell phones, all HBM employees had their cell phones on the HBM plan. The FM Global plan was actually that employees had their own cell phones and were reimbursed. So, when he was notified of the HBM policy, I'm sorry, of the FM Global policy, he actually reached out to the Verizon rep to say, let me get in compliance. Let me pull any phone lines that are in my name off of that policy, in which, by the way, his wife was using his backup phone and his daughter, actually, her name was on that account. He certainly was not trying to hide it. It was an oversight of failure to reimburse. But certainly, there was no deceit intended there. If he was intending to deceive anybody, he wouldn't have had her name on the list. Are you saying, counsel, at least that is a genuine issue of material fact that would entail a trial and a jury should be the one who determines whether he lied or not lied? Yes, Your Honor. Thank you. Thank you. That concludes argument in this case. Attorney Porter and Attorney Callahan, you should disconnect from the hearing at this time.